2015 UT App 79

## THE UTAH COURT OF APPEALS

SMITH'S FOOD & DRUG, INC. AND KROGER CO.,
Petitioners,
*v.*
LABOR COMMISSION AND MARY DEE COX,
Respondents.

Opinion
No. 20131145-CA
Filed April 2, 2015

Original Proceeding in this Court

Bret A. Gardner and Kristy L. Bertelsen, Attorneys
for Petitioners

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Aaron J. Prisbrey and Trevor C. Sanders, Attorneys
for Respondent Mary Dee Cox

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGES
STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.

DAVIS, Judge:

¶1     Smith's Food & Drug, Inc. and Kroger Co. (collectively, Kroger) seek our review of the Utah Labor Commission's decision affirming the administrative law judge's (ALJ) order awarding legal fees to Mary Dee Cox. We decline to disturb the Commission's decision.

## BACKGROUND

¶2     Cox injured her right shoulder in March 2005 while she was working for Kroger. Kroger paid medical benefits related to the industrial accident through a third-party administrator (the

Adjuster). In 2008, Cox's physician recommended that she undergo surgery on her right shoulder. The Adjuster's internal medical review approved a total shoulder replacement, but Cox ultimately underwent only a partial shoulder replacement.

¶3 Cox continued experiencing shoulder pain after the surgery, and in 2011, her physician recommended that she see a specialist at the University of Utah. Cox sought authorization from the Adjuster to see a specialist, but the Adjuster failed to respond. Cox subsequently hired an attorney and filed an application for hearing with the Commission, seeking medical benefits and attorney fees. She later clarified that she sought benefits relating to her request to see a specialist and for a total shoulder replacement.

¶4 By the time the ALJ held an evidentiary hearing, "Kroger had accepted liability for the total shoulder replacement," leaving only "the issue of attorney fees . . . in dispute." The ALJ concluded that attorney fees were warranted because "[t]he filing of the Application for Hearing is what generated a review of the insurance company's position of denial and allowed for the approval of medical benefits for continued treatment of Ms. Cox's right shoulder industrial injury." *See* Utah Code Ann. § 34A-1-309(4)(a)(ii) (LexisNexis 2011) (permitting the commission to award attorney fees if, "after the employee employs an attorney, medical benefits are paid or ordered to be paid").

¶5 The ALJ rejected Kroger's argument that "at the time the Application for Hearing was filed no benefits had been denied" because Cox had not requested approval for a total shoulder replacement since 2008 and the 2008 request had been granted. Kroger sought the Commission's review of the ALJ's decision, reiterating its argument that it never denied Cox's request for benefits because "it did not learn of [her] requested surgery until after she filed her application for hearing and that it originally

believed she was only seeking medical expenses related to the consultation [with a specialist]."

¶6     The Commission considered Cox's 2008 request for the total replacement surgery to have gone unanswered until Cox's application for hearing prompted Kroger's approval in 2012. The Commission noted that in 2008, "[f]or some reason, Ms. Cox received authorization for only a partial procedure . . . despite [the Adjuster internally] approving payment for a total shoulder replacement." Accordingly, the Commission reasoned that "Kroger was aware of [the] required treatment in 2008 but did not actually approve it until . . . 2012." The Commission concluded that Kroger's approval did not occur within a reasonable amount of time, observing that "an insurance carrier or a self-insured employer like Kroger" generally is "allowed 21 or 45 days to approve medical benefits such as Ms. Cox's requested total shoulder replacement." Therefore, the Commission upheld the ALJ's award of attorney fees to Cox under Utah Code section 34A-1-309(4)(a).

## ISSUE AND STANDARDS OF REVIEW

¶7     Kroger seeks our review of the Commission's decision to award attorney fees under Utah Code section 34A-1-309(4)(a). That statute provides the Commission with the discretion to award fees if certain conditions are met. *See id*. § 34A-1-309(4)(a) (indicating that "the commission *may* award reasonable attorney fees" (emphasis added)). Accordingly, we review the Commission's decision for an abuse of discretion, which requires us "to ensure that [the decision] falls within the bounds of reasonableness and rationality." *See Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 32, 308 P.3d 461 ("Reasonableness . . . is essentially a test for logic and completeness rather than the correctness of the decision."); *see also id*. ¶ 29 ("[F]or an 'abuse of discretion' standard to apply on appeal, the agency action under review must involve 'discretion.'").

¶8    Kroger's challenge necessarily focuses on a subsidiary determination inherent to the Commission's award of fees—that the facts of this case satisfy the conditions outlined in section 34A-1-309(4)(a). "[T]he question of whether a set of facts falls within a legal standard is . . . a question of law." *Id.* ¶ 33. Whether the facts satisfy the statutory requirements turns on "the legal effect of" the facts. *See id.* ¶¶ 34, 40. While some of the facts here are disputed, namely, whether the Adjuster actually communicated to Cox that it had approved a total shoulder replacement in 2008, "the ultimate question is the legal effect of the facts rather than witness credibility or demeanor." *See id.* ¶ 40. Accordingly, in conducting our review, we afford the Commission's application of the law to the facts no deference. *See Sawyer v. Department of Workforce Servs.*, 2015 UT 33, ¶ 11; *see also Murray*, 2013 UT 38, ¶¶ 36–40 (explaining the difference between issues that are more "law-like" and issues that are more "fact-like").

## ANALYSIS

¶9    Kroger interprets section 34A-1-309(4)(a) as requiring "a current dispute over a denied medical benefit at the time the Application for Hearing is filed by the claimant with the Labor Commission" as a precondition to an award of attorney fees. Kroger asserts that because there was "no current medical benefit dispute between the parties," there was no need for Cox to hire an attorney and file an application for hearing.

¶10    "In interpreting a statute, [we] must look first to its plain language." *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998). And "we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning," and "[w]hen the meaning of [a] statute can be discerned from its language, no other interpretive tools are needed." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011

UT 50, ¶¶ 14–15, 267 P.3d 863 (second alteration in original) (citations and internal quotation marks omitted).

¶11    Section 34A-1-309(4)(a) provides,

> [T]he commission may award reasonable attorney fees on a contingency basis for medical benefits ordered paid . . . if:
>
> (i) medical benefits are not approved by:
>
>> (A) the employer or its insurance carrier; . . .
>
>> . . .
>
> (ii) after the employee employs an attorney, medical benefits are paid or ordered to be paid;
>
> (iii) the commission's informal dispute resolution mechanisms are reasonably used by the parties before adjudication; and
>
> (iv) the sum of the following at issue in the adjudication of the medical benefit claim is less than $4,000:
>
>> (A) disability or death benefits; and
>
>> (B) interest on disability or death benefits.

Utah Code Ann. § 34A-1-309(4)(a) (LexisNexis 2011). We agree that the statute conditions the availability of attorney fees on the existence of a medical benefit dispute in the proceedings before the Commission. The statute imposes four preconditions on the Commission's ability to award fees. The first condition requires that "medical benefits are not approved by . . . the employer or its insurance carrier." *Id.* This language clearly predicates the availability of attorney fees on an insurance adjuster's or

employer's decision to "not approve[]" a claim for benefits. *Id.* We note that the language does not require that the insurer or employer specifically deny benefits.

¶12    Here, Cox's request to see a specialist was "not approved" by the Adjuster by the time she filed her application for hearing.[1] *See id.* Both parties acknowledge that Cox's request to see a specialist went unanswered and that Cox attached medical records related to that request to her application for hearing. Thus, we reject Kroger's assertion that no medical benefits were in dispute when Cox filed her application. The other requirements of section 34A-1-309(4)(a) are not in dispute. As the Commission stated, "[t]here is no dispute that medical benefits were paid to Ms. Cox after she retained an attorney" or "that the parties reasonably used the Commission's informal dispute

---

1. The Commission and the parties spend a significant amount of their analyses parsing what occurred in response to Cox's 2008 request for a total shoulder replacement. *See supra* ¶¶ 2–6. The Commission tied the Adjuster's 2012 authorization for a total shoulder replacement to Cox's 2008 request for that procedure and concluded that the Adjuster's approval was unreasonably untimely. Kroger disputes the Commission's finding that only a partial replacement was authorized in 2008, arguing that the partial replacement occurred not because the Adjuster's authorization limited Cox to that procedure but because Cox's treating physician opted for a partial replacement. Kroger characterizes Cox's subsequent request for a total replacement as an entirely new claim for benefits. We do not consider the characterization of Cox's 2008 request to be central to our analysis. Our analysis starts from the premise that, regardless of what occurred in 2008, the Adjuster's undisputed failure to respond to Cox's request to see a specialist existed at the time Cox hired an attorney and filed her application for hearing.

resolution mechanisms prior to adjudication."[2] *See id.* § 34A-1-309(4)(a)(ii)–(iii).

¶13     Kroger nonetheless asserts that because Cox's claim for a total shoulder replacement was not in dispute at the time she initiated proceedings, the Adjuster's ultimate approval of that procedure cannot be considered in the Commission's calculation of the attorney fee award. We disagree.

¶14     Nothing in the statute's language ties the benefits upon which an attorney fee award is ultimately calculated to the benefits that were in dispute at the time an application for hearing was filed. Rather, section 34A-1-309(4)(a) provides attorney fees on a contingency basis based on the total amount of benefits "'generated,'" i.e., "paid as a result of" the claimant hiring an attorney. *See* Utah Admin. Code R602-2-4(C), (E). In other words, the amount the Commission can award is a percentage of the total amount of benefits generated and is not limited to a subset of the generated benefits that reflects only the benefits that were in dispute at the time the application for hearing was filed. *See id.*; *see also Black's Law Dictionary* 362 (9th ed. 2009) ("Contingent fees are usu[ally] calculated as a percentage of the client's net recovery . . . ."). While in practice it may be that the benefits generated and the benefits initially in dispute are similar, the statute does not impose such a limitation.

¶15     The legislative history of section 34A-1-309(4) appears to support our plain language interpretation. The legislature enacted this provision to close a gap in the statutory framework pertaining to the Commission's ability to award attorney fees. As explained by the legislation's sponsor, Senator Karen Mayne, individuals utilizing the Commission's dispute resolution

---

2. The requirements of subsection (iv) are also not at issue in this case.

system often have a wage dispute, medical benefit dispute, or both, and until this provision was enacted, the statutory framework provided attorney fees for wage disputes only. *See* Recording of Utah Senate Floor Debates, 58th Leg., Gen. Sess. (Feb. 10, 2009) (statements of Sen. Karen Mayne). Moreover, Senator Mayne explained, medical benefit disputes can be complicated and time consuming and attorneys working on medical benefit disputes were simply not "get[ting] paid for their services," even when an employer or insurer would grant the disputed benefit on "the eve of the trial." *Id.* Thus, the legislature appeared to intend section 34A-1-309(4) to remedy this "financial situation." *Id.*; *see also id.* (Feb. 11, 2009) ("[W]e have injured workers that need counsel, and we have attorneys that are willing to do this. So, this bill addresses that the attorneys will get medical fees and wage fees.").

¶16    Additionally, as the ALJ recognized, Kroger did initially resist Cox's latest application for the total replacement surgery and was "actively preparing a defense to the claim and denying liability." Although Kroger "acted ethically and fairly" when it withdrew its defense after receiving the report from its internal medical review that "was favorable" to Cox, we are not convinced that the Commission abused its discretion when it concluded that these circumstances met the statute's requirements that "medical benefits [were] paid or ordered to be paid" after and because Cox employed an attorney. *See* Utah Code Ann. § 34A-1-309(4)(a)(ii) (LexisNexis 2011).

CONCLUSION

¶17    Kroger exposed itself to liability for Cox's attorney fees by failing to address Cox's request to see a specialist. The Commission has the discretion to award attorney fees pursuant to Utah Code section 34A-1-309(4)(a), and we are not convinced

that its award was an abuse of that discretion. We therefore decline to disturb the Commission's decision.[3]

_____

3. We deny Cox's request for attorney fees and costs as a sanction pursuant to rule 33 and 34 of the Utah Rules of Appellate Procedure. Although Kroger did not succeed on its appeal, its arguments are not "obviously without merit, with no reasonable likelihood of success," and do not warrant imposing fees or costs as a sanction. *See Midland Funding, LLC v. Sotolongo*, 2014 UT App 95, ¶ 41, 325 P.3d 871 (citation and internal quotation marks omitted) (construing rule 33 of the Utah Rules of Appellate Procedure).